The following constitutes the
Memorandum Decision of the Court.
Signed January 06, 2009

_____
Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 02-55795-RLE |
| | Chapter 11 |
| 3DFX INTERACTIVE, INC., a California corporation, | |
| Debtor. | |
| _____ | |
| OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, on its own behalf, and on behalf of the bankruptcy estate of 3DFX INTERACTIVE, INC., a California corporation, | |
| | Adv. Pro. No. 06-5115 |
| Plaintiff, | |
| vs. | |
| nVIDIA CORPORATION, a Delaware corporation; et al., | |
| Defendants. | |
| _____ | |

**MEMORANDUM DECISION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

1

1    Before the Court for decision are the cross-motions for

2  summary judgment brought by plaintiff, the Official Committee of

3  Equity Security Holders (the "Equity Committee") and defendants,

4  nVidia Corporation and nVidia US Investment Company (collectively,

5  "nVidia").  The motions are directed at the first three claims for

6  declaratory relief in the Equity Committee's First Amended

7  Complaint in this adversary proceeding (the "FAC" and the "Section

8  1.3 Action").  The motions have been fully briefed and argued.

9  **I. INTRODUCTION**

10   In December 2000, 3dfx Interactive, Inc. ("3dfx" or "Debtor")

11  entered into an asset purchase agreement with nVidia (the "APA" and

12  the "Transaction").[1]  The Transaction closed in April 2001.  Under

13  the APA, nVidia paid 3dfx cash of $70 million (the "Cash

14  Consideration") for Specified Assets, and upon satisfaction of

15  certain conditions, agreed to provide shares of nVidia common stock

16  (the "Stock Consideration").  As of October 2002, when 3dfx filed

17  bankruptcy, the conditions for delivery of the Stock Consideration

18  had not been satisfied and the Stock Consideration had not been

19  delivered to 3dfx.

20   In February 2003, William A. Brandt, Jr., the chapter 11

21  trustee of Debtor's estate, sued nVidia to avoid the Transaction as

22  a fraudulent conveyance (the "Trustee" and the "Trustee's Adversary

23  Proceeding").  In March 2006, the Equity Committee filed its

24  chapter 11 plan (the "Equity Committee Plan") and was thereafter

25  granted derivative standing to bring the Section 1.3 Action in

26  connection with confirmation of its Plan.  The goal of the Equity

27  _____

28    [1] Capitalized terms not otherwise defined have the meanings given
to them in the APA.

[3dfx/EqCmte/nVidia/06-5115.SJDecis]                              2

UNITED STATES BANKRUPTCY COURT

For The Northern District Of California

Committee's Plan is to satisfy the conditions contained in the APA for the delivery of the Stock Consideration to the estate.

As of May 1, 2006, the estate had two adversary proceedings pending against nVidia - the Trustee's seeking to avoid the Transaction as a fraudulent conveyance, and the Equity Committee's seeking to assume the APA and enforce it in conjunction with confirmation of its Plan. The Trustee's Adversary Proceeding went to trial in March 2007, and in September 2008, judgment was entered in favor of nVidia. TA Docket no. 524.[2]

For the reasons discussed herein, summary judgment in favor of nVidia is appropriate.

## II. STATEMENT OF FACTS

### A. Background Regarding 3dfx and nVidia

#### 1. The Asset Purchase Agreement

In December 2000, 3dfx and nVidia entered into the APA pursuant to which nVidia purchased Specified Assets from 3dfx, nVidia and 3dfx agreed to settle their pending patent litigation, and 3dfx agreed, upon completion of the purchase of the Specified Assets, to dissolve. EC Docket no. 109, Ex. A. The Transaction is described in detail in the Memorandum Decision filed April 30, 2008, in the Trustee's Adversary Proceeding. TA Docket no. 499. The facts stated in the Memorandum Decision are incorporated herein by reference.

---

[2] The following abbreviations are used here: "TA Docket" refers to the docket in the Trustee's Adversary Proceeding, A.P. 03-5079; "EC Docket" refers to the docket in this adversary proceeding; "MC Docket" refers to the docket in the main case, chapter 11 case 02-55795. The Court takes judicial notice of matters in each of these to the extent relied upon herein.

[3dfx/EqCmte/nVidia/06-5115.SJDecis]                                    3

Pursuant to § 1.2 of the APA, nVidia agreed to pay the $70 million Cash Consideration, and agreed, upon satisfaction of the conditions set forth in § 1.3 of the APA, to provide 3dfx with the Stock Consideration consisting of one million shares of nVidia common stock. The Stock Consideration was subject to adjustment and since December 2000, has increased to six million shares. See § 1.4(c).

Section 1.3(a) provided that the Stock Consideration would be issued promptly following the Closing but was only deliverable upon the completion of the winding-up of 3dfx's business pursuant to its Plan of Dissolution and certification that all 3dfx's Liabilities had been paid in full or otherwise provided for (in a manner satisfactory to nVidia) from sources other than the Stock Consideration. Section 1.3 also provided that upon certain conditions, 3dfx was permitted to request a Post-Closing Advance of up to half the Stock Consideration up to a maximum of $25 million (calculated at $50 per share), if this was necessary and sufficient to enable 3dfx to pay its Liabilities in full. EC Docket no. 109, Ex. A, p. 3-4.

There was no Post-Closing Advance, although nVidia and 3dfx management discussed it. They also discussed the possibility of, and disagreed about, whether 3dfx could issue preferred stock or employ some other means to raise the funds to complete payment of 3dfx's Liabilities and thereby satisfy the conditions to receipt of the Stock Consideration.

**2. The Closing and the Closing Agreement**

3dfx obtained shareholder approval of the Transaction and its Plan of Dissolution. nVidia contends that by mid-April 2001 it had

[3dfx/EqCmte/nVidia/06-5115.SJDecis]                                              4

no obligation to proceed with the Closing because certain material representations and warranties made by 3dfx in the APA were inaccurate.[3]   Nonetheless, nVidia and 3dfx proceeded with the Closing and the Transaction closed in April 2001 with the APA modified by the terms of the Closing Agreement.  EC Docket no. 109, Ex. B.

The Closing Agreement provided that the Closing could occur in three phases.  In the first phase, the Cash Consideration was to be paid.  In the second phase, 3dfx could have received all of part of the Post-Closing Advance, and in the third phase, 3dfx could have received the Stock Consideration, less the amount of any Post-Closing Advance.  EC Docket no. 109, Ex. B.  nVidia paid the Cash Consideration at the April 2001 Closing, but the second and third phases had not occurred before 3dfx filed its chapter 11 case in October 2002.

### 3. 3dfx Files Bankruptcy

3dfx filed this chapter 11 case on October 15, 2002.  Its pre-petition liabilities are approximately $27 million.  MC Docket no. 1099.  The schedules, statement of financial affairs and the monthly operating reports also indicate there are few - if any - assets other than the prospect of recovery in litigation against nVidia.  Debtor's Schedule B (Personal Property) lists a $33 million contingent claim against nVidia.  Debtor's Schedule G (Executory Contracts and Unexpired Leases) does not list the APA. MC Docket no. 1.

---

[3] nVidia contends the following sections of the APA are relevant on this point: § 1.3; § 2.12; § 2.29; § 4.2; § 4.8; § 10.3; and § 10.4.

Case: 06-05115    Doc# 136    Filed: 01/06/09    Entered: 01/06/09 13:42:37    Page 5 of 36

**B.  The Trustee's Adversary Proceeding**

     **1. The Trustee's Allegations and Positions**

In February 2003, the Trustee filed the Trustee's Adversary Proceeding against nVidia, alleging, among other claims, that the Transaction amounted to a fraudulent conveyance.  TA Docket no. 4. The Trustee argued that nVidia had acquired property from 3dfx worth at least $140 million.  Because nVidia had paid only $70 million, by definition, it had paid less than reasonably equivalent value in the Transaction.  TA Docket no. 499.

In response to nVidia's interrogatories, the Trustee took the position that 3dfx had "forfeited its rights" to the Stock Consideration because 3dfx had been unable to settle all its creditors' claims for $95 million (made up of the $70 million Cash Consideration and the Post-Closing Advance of up to $25 million). EC Docket no. 107, Varian Dec., Ex. A.  The Trustee's responses also stated that if the Liabilities "exceeded $95 million (which they did), 3dfx was not entitled to receive any stock compensation whatsoever."  EC Docket no. 107, Varian Dec., Ex. B.[4]  His responses also stated that 3dfx entered into the Transaction knowing that its liabilities exceeded its assets and that it would be unable to pay creditors with the $95 million potentially available to 3dfx under the APA.  EC Docket no. 107, Varian Dec., Ex. B.

---

    [4] 3dfx took the same position in its proxy statement filed with the SEC on February 15, 2001. See EC Docket no. 109, Ex. C, p. 21-23. The Trustee is assumed to have exercised his business judgment in choosing the optimal litigation strategy and in analyzing whether the APA was an executory contract and, if so, the benefits to the estate and claims against it that would flow from a decision to assume or reject.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 6 of
36

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

**2. Trial in the Trustee's Adversary Proceeding**

In January 2007, the Court issued its Pre-trial Order setting a trial date. TA Docket no. 253. Trial on the issues identified in the Pre-trial Order took place in March 2007.[5] The Court issued a Memorandum Decision in April 2008 in which it concluded that the value of what was transferred was $30 million and nVidia had paid reasonably equivalent value for what it acquired in the Transaction. TA Docket no. 499, p. 85-87.

**3. Judgment in the Trustee's Adversary Proceeding**

The remaining claims for relief in the Trustee's Adversary Proceeding have now been resolved by summary judgment and on September 11, 2008, judgment was entered in nVidia's favor. TA Docket nos. 499, 500, 522, 524. The Trustee's appeal is pending in the District Court. TA docket no. 527.

**C. Background Regarding the Equity Committee**

**1. Appointment of the Equity Committee and its Plan**

In February 2006, the Equity Committee was formed and retained counsel. MC Docket nos. 739, 740, 741, 750, 755. In March 2006, the Equity Committee filed the Equity Committee Plan. MC Docket nos. 772, 1000. In theory, the Equity Committee's Plan is structured to satisfy the conditions to nVidia's obligation under the APA to deliver the Stock Consideration to the estate. EC Docket no. 54, FAC ¶28; MC Docket no. 1000, § VI - VII.

**2. The Equity Committee is Granted Derivative Standing**

In April 2006, the Equity Committee sought and was granted

---

[5] On the eve of trial, the Equity Committee sought leave to intervene by "joining" the Trustee's complaint. Both nVidia and the Trustee opposed this request and the Court denied it. TA Docket nos. 286, 345, 349, 358, 387.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 7 of 36

derivative standing to pursue the Section 1.3 Action on behalf of the estate.  MC Docket no. 828.

### 3. The Section 1.3 Action

On May 1, 2006, the Equity Committee commenced the Section 1.3 Action.  On September 12, 2006, the Equity Committee filed the FAC. The FAC states six claims for declaratory relief based on the disputed status of the APA and the Stock Consideration.  Only the first three claims in the FAC are proceeding at this time.  EC Docket no. 79.

In the first three claims for relief, the Equity Committee seeks declarations that: (1) the APA has not been terminated by its own terms, by operation of law or equity, or for any other reason; (2) the APA and Debtor's rights therein became property of the estate; and (3) the APA is an executory contract.  EC Docket no. 54.[6]

nVidia's answer denies that the Equity Committee is entitled to the declaratory relief sought and states affirmative defenses, including laches, statute of limitations, judicial estoppel, standing, expiration of the APA, ripeness, election of remedies, and claim splitting.  EC Docket no. 79.

### 4. The Equity Committee's Financing Commitment

In January 2007, the Court granted the Equity Committee's Motion for Order Approving Investor Protections for Harbinger Capital Partners Master Fund I, Ltd. for Proposed Investment in

---

[6] The fourth, fifth and sixth claims of the FAC seek judicial determinations that: (1) any breaches under the APA do not excuse nVidia's obligation to deliver the Stock Consideration; (2) any defaults by 3dfx are either curable or are not required to be cured and compensated for; and (3) the APA can be assumed. EC Docket no. 54.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Connection with Equity Committee's Chapter 11 Plan (the "Investor Protection Motion" and "Harbinger"). MC Docket nos. 982, 1004, 1005. In March 2007, the Court entered an Order approving the commitment letter between Harbinger and the Equity Committee in connection with Harbinger's proposed preferred stock investment under the Equity Committee's Plan (the "Commitment Letter"). MC Docket nos. 1004, 1025.

According to the Equity Committee's Plan and the Harbinger Commitment Letter, Debtor will issue preferred stock and Harbinger will purchase this preferred stock for an aggregate purchase price of up to $51.5 million. MC Docket no. 1004, ¶3. The Commitment Letter includes two key conditions to the Harbinger investment: (1) there must be an order granting the Equity Committee each prayer for relief in the FAC; and (2) nVidia must deliver stock with a total value on the final closing date (as defined therein) of not less than 1.15 times $55 million (i.e., $63.25 million). MC Docket no. 1004, ¶8(f) and ¶9(d).

### 5. The Fluctuating Value of the Stock Consideration

The value of nVidia's common stock has fluctuated throughout the time period relevant to this chapter 11 case. In addition, the original one million shares specified in § 1.3 of the APA have now increased to six million shares. The Equity Committee stated that the Stock Consideration had a value of more than $100 million when it sought derivative standing in March 2006, and stated it had a value of $140 million when it sought approval of its financing

//

//

//

Case: 06-05115    Doc# 136    Filed: 01/06/09    Entered: 01/06/09 13:42:37    Page 9 of
36

commitment in December 2006.[7]  MC docket nos. 782, 982.  nVidia's
opposition to the Equity Committee's motion for summary judgment
states that the Stock Consideration had decreased in value to
approximately $54 million as of October 3, 2008.  EC Docket no.
120, Ex. D (closing price on October 3, 2008 of $9.03/share).

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, the discovery
and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.
56(c) applicable here by Fed. R. Bankr. P. 7056.  An issue is
"genuine" only if there is an evidentiary basis on which a
reasonable fact finder could find for the nonmoving party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
dispute is "material" only if it could affect the outcome of the
suit under governing law.  Id.  At the summary judgment stage, the
court does not weigh the evidence and determine the truth of the
matter, but determines whether there is a genuine issue for trial.
Id. at 249.

As plaintiff and moving party – with the burden of proof at
trial – the Equity Committee must come forward with evidence which
would entitle it to a directed verdict if the evidence went
uncontroverted at trial.  Miller v. Glenn Miller Prod., Inc., 454

---

[7] According to the Equity Committee, when the Trustee brought his
Adversary Proceeding against nVidia, the Stock Consideration was
"worth but a small fraction" of what it was worth when the Equity
Committee began this Action.  MC Docket no. 782, p. 5.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 10 of
36

F.3d 975, 987 (9th Cir. 2006) (citing <u>C.A.R. Transp. Brokerage Co.,</u> <u>Inc. v. Darden Rests., Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). As defendant and moving party, nVidia has both the initial burden of production and the ultimate burden of persuasion on its motion for summary judgment. nVidia must either produce evidence negating an essential element of the Equity Committee's claims or show that the Equity Committee does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Nissan Fire &</u> <u>Marine Ins. Co., Ltd. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). If nVidia satisfies this initial burden of production, the Equity Committee must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Nissan</u> <u>Fire & Marine</u>, 210 F.3d at 1103. The Equity Committee must present significant probative evidence that a genuine issue of fact exists. <u>Liberty Lobby</u>, 477 U.S. at 255. In ruling on either motion, the evidence offered by the opposing party is to be believed and all reasonable inferences are to be drawn in its favor. <u>Liberty Lobby</u>, 477 U.S. at 255.

The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine issue of material fact. If there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment. <u>Fair Housing Council of Riverside</u> <u>County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 2720, at 335-36 (3d ed. 1998).

**B. The Equity Committee's Motion for Summary Judgment**

The Equity Committee argues that there are no material disputed facts and it is entitled to judgment as a matter of law that: (1) the APA has not been terminated; (2) the APA became property of the estate under Bankruptcy Code § 541[8]; and (3) the APA is an executory contract under the controlling Ninth Circuit definition. EC Docket nos. 91 - 93. nVidia's opposition disputes each of these contentions. EC Docket nos. 115 - 120.

**C. nVidia's Motion for Summary Judgment**

nVidia argues that: (1) the Section 1.3 Action is time-barred; (2) pre-petition material breaches by Debtor terminated the APA; (3) the estate has no enforceable contract right to any of the Stock Consideration; (4) the APA is not an executory contract; (5) the Equity Committee has no standing; and (6) this case involves impermissible claim splitting. EC Docket nos. 107 - 109.

The Equity Committee's opposition to nVidia's motion disputes each of nVidia's contentions and stresses that it has independent standing, its claims are not time-barred, and claim splitting is not an issue. EC Docket nos. 110 - 111.

The Court will consider nVidia's motion first.

//
//
//
//

---

[8] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, enacted prior to The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 12 of 36

**D. Relationship between the Equity Committee and the Trustee**

    **1. The Claims for Relief in the FAC are Property of the Estate**

The commencement of a bankruptcy case creates an estate. Bankruptcy Code § 541(a). The "property of the estate" includes all "legal or equitable interests of the debtor in property as of the commencement of the case." Bankruptcy Code § 541(a)(1). The estate created pursuant to § 541(a) includes causes of action belonging to the debtor at the time the case is commenced; the estate succeeds to no more or greater causes of action against third parties than those held by the debtor. <u>Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv. Inc.)</u>, 113 F.3d 1091, 1099 (9th Cir. 1997) (estate succeeds to debtor's rights); <u>In re Crown Vantage, Inc.</u>, 2003 WL 25257821, *6 (N.D. Cal. 2003), <u>aff'd</u>, 198 Fed. Appx. 597 (9th Cir. 2006) (noting that legislative history of § 541 indicates section not intended to expand debtor's rights against others more than they existed at commencement of case, noting also that claims time-barred as to debtor are time-barred as to trustee).

The Trustee is the representative of the estate with the capacity to sue or be sued. Bankruptcy Code § 323. The Trustee has the duty to pursue causes of action that are in the best interest of the estate. Bankruptcy Code § 704(a), § 1106(a); <u>Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)</u>, 207 B.R. 899, 904 (9th Cir. BAP 1997) (trustee or debtor in possession has obligation to pursue all actions that are in the best interests of creditors and the estate).

//

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 13 of 36

**2. Derivative Standing does not Confer Ownership of the Claims for Relief in the FAC**

There is no explicit authority in the Bankruptcy Code for a committee to initiate adversary proceedings but it is clear that in certain situations, a committee may be permitted to proceed as the Equity Committee is proceeding here - with derivative standing. In re Spaulding Composites Co. Inc., 207 B.R. at 903-04 (direct and derivative standing distinguished; court may approve derivative standing for a party other than the trustee or debtor-in-possession to pursue the estate's litigation). This derivative standing, a salutary element of the chapter 11 process, does not confer ownership of the claims on the party proceeding in that capacity. See Official Committee of Equity Security Holders v. Official Committee of Unsecured Creditors (In re Adelphia Comm's Corp.), 544 F.3d 420 (2d Cir. 2008) (equity committee's assertion that derivative standing conferred ownership of claims rejected).

**3. The Equity Committee and the Trustee are the Same Party**

The Equity Committee argues that it should not be viewed as the same party as the Trustee because each has taken distinct positions and has utilized unrelated counsel to prosecute disparate causes of action seeking incompatible forms of relief. According to the Equity Committee, because of this, it is not bound by any of the prior positions taken by the Trustee, by any of this Court's factual or legal findings as to the Trustee, or by the statute of limitations applicable to the Trustee. EC Docket no. 110, ¶21; no. 125, ¶4. While the Equity Committee does not clearly articulate it, implicit in this argument is the apparent position that the Equity Committee owes a fiduciary duty to its constituents and no

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 14 of 36

one else.  However, when the Committee undertook this Section 1.3 Action, the scope of its fiduciary duty expanded - it is now acting as a fiduciary on behalf of Debtor's estate.[9]

In <u>Cheng v. K&S Diversified Investments, Inc. (In re Cheng)</u>, 308 B.R. 448 (9th Cir. BAP 2004), the Ninth Circuit Bankruptcy Appellate Panel discussed the possibly adverse interests and inconsistent positions taken by a debtor - acting for its own interest in protecting a homestead exemption, and acting in the interest of creditors and as a trustee in objecting to claims.  The court stated it was fundamental that it was permissible to take these inconsistent positions when the debtor acted in these different capacities.  The court relied on the Restatement (Second) of Judgments § 36 (hereafter, the "Restatement"), which provides that a person acting in multiple capacities is ordinarily permitted to take inconsistent positions "without triggering claim or issue preclusion."  <u>In re Cheng</u>, 308 B.R. at 455.  This rule is "designed to safeguard the integrity of the representative functions by fostering fidelity to the beneficiaries of representative functions." <u>Id.</u>; <u>see also</u> Restatement § 36, cmt a.

This is not the situation presented in this case.  Here, the Equity Committee is acting *on behalf of* the estate, and is acting on behalf of the same constituents as the Trustee.  The Trustee, in effect, and the Court in granting derivative standing, deputized the Equity Committee to act as the Trustee's agent on behalf of the estate.  The Equity Committee is thus appearing in this Section 1.3

---

[9] The Order granting standing states the "Equity Committee is hereby granted derivative standing to pursue, on behalf of Debtor's estate, the Section 1.3 Action." MC Docket no. 828.

Action in the *same capacity* as the Trustee - as the representative of the estate on behalf of the same beneficiaries. The Equity Committee's description of the relationship between this case and the Trustee's Adversary Proceeding confirms this: it described the two cases as "aimed at achieving similar goals - satisfaction of the defendants' economic obligations to the Debtor's estate - albeit through different means." EC Docket no. 125, p.5, n. 7.

Like Prometheus bound, the Equity Committee is chained to the Trustee. Because the Equity Committee and the Trustee are acting in the *same capacity*, they may not take inconsistent positions and the standard rules of claim and issue preclusion will apply. In re Cheng, 308 B.R. at 455.

**E. Claim Preclusion**

nVidia argues that the Section 1.3 Action is barred as improper claim splitting. Relying on the definitions in Restatement § 24 and § 25 applicable in the Ninth Circuit, nVidia contends that because a final judgment has been entered in nVidia's favor in the Trustee's Adversary Proceeding, the doctrine of claim splitting - a part of the doctrine of claim preclusion - prevents the Section 1.3 Action from proceeding.

The Equity Committee responds that it is free to proceed because the Section 1.3 Action and the Trustee's Adversary Proceeding are "distinct causes of action based on different legal theories," and although they could have been adjudicated together, the Court chose "to have them pursued separately but simultaneously" and their claims do not have to be reduced to judgment in the same suit. EC Docket no. 110, p. 13:1-12.

//

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 16 of 36

**1. The Rules Regarding Merger, Bar and Claim Splitting**

According to the Restatement, the doctrine of claim preclusion subdivides into the doctrines of merger, bar and the general rule against claim splitting. _Alary v. Sims (In re Assoc. Vintage Group, Inc.)_, 283 B.R. 549, 555 (9th Cir. BAP 2002). Under the general rule of merger, a valid and final personal judgment in favor of a plaintiff extinguishes the entire claim - it is merged into the judgment. "The plaintiff cannot thereafter maintain an action on the original claim or any part thereof." Restatement § 18. The general rule of bar provides that "a valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." Restatement § 19. The rules of merger and bar are reinforced by the general rule concerning splitting: the extinguished claim extends to all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction out of which the claim arose. Restatement § 24.[10] The consequence of the general rule concerning splitting is stated in Restatement § 25.[11] A plaintiff cannot

---

[10] Restatement § 24 provides: "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose[;] (2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

[11] Restatement § 25 provides: "The rule of § 24 applies to extinguish a claim by a plaintiff against a defendant even though plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 17 of 36

1  assert, in a separate action, new evidence, grounds, theories,

2  remedies or forms of relief related to the initial claim.

3  **2. Applicable Definition of Claim**

4  Before applying claim preclusion, one must first define the

5  underlying claim and then analyze whether the claim asserted in the

6  second action constitutes the same "claim" for claim preclusion

7  purposes.  The Ninth Circuit has adopted the principles of the

8  Restatement in defining what constitutes the same claim for claim

9  preclusion purposes.  In re Assoc. Vintage Group, Inc., 283 B.R. at

10  557; Goldstein v. Griffing (In re Goldstein), 297 B.R. 766, 769-770

11  (Bankr. D. Ariz. 2003) (relying on four criteria stated in Harris

12  v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980) for determining

13  dimensions of claim).

14  The Ninth Circuit test to determine a "claim" for purposes of

15  the merger and bar doctrines and application of the rule concerning

16  splitting requires consideration of: (1) whether rights or

17  interests established in the prior judgment would be destroyed or

18  impaired by prosecution of the second action; (2) whether

19  substantially the same evidence is presented in the two actions;

20  (3) whether the two suits involve infringement of the same rights;

21  and (4) whether the two suits arise out of the same transactional

22  nucleus of facts.  Harris v. Jacobs, 621 F.2d at 343; Costantini v.

23  Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982); In re

24  Assoc. Vintage Group, Inc., 283 B.R. at 558.

25  //

26  //

27

28  action."

[3dfx/EqCmte/nVidia/06-5115.SJDecis]                               18

### 3. The Four Factors for Finding Same Claim are Met

Although the test cannot be applied mechanically and no one factor is dispositive, the most important factor is the fourth - whether there is a transactional nucleus of facts. <u>Costantini</u>, 681 F.2d at 1201-02. This determination requires a pragmatic case-by-case analysis. <u>In re Assoc. Vintage Group, Inc.</u>, 283 B.R. at 558; <u>In re George</u>, 318 B.R. 729 (9th Cir. BAP 2004)(debtors litigated Bankruptcy Code § 365 lease rejection issues to conclusion, then litigated lease issues in federal court on additional theories, debtor's third action in bankruptcy court on Bankruptcy Code § 525 theory was barred because it was part of the same claim arising from the same transactional group of facts under Restatement definitions).

Under the Ninth Circuit test, and the Restatement definition of a claim, there is no question that the same transactional nucleus of facts is involved in this Section 1.3 Action as was involved in the Trustee's Adversary Proceeding. Each action involves an interpretation of the APA and the rights and remedies flowing from it just as each action in <u>In re George</u> involved an interpretation of the parties' lease and the rights and remedies arising from that relationship. In other words, each case involves the same transactional nucleus of facts.

The second and third factors (whether there is an overlap of evidence and whether the same rights are infringed) are also present here. The primary evidence in this Section 1.3 Action overlaps to a significant degree with the evidence offered in the Trustee's Adversary Proceeding. The focus in this Section 1.3 Action is the APA itself as it was in the Trustee's Adversary

[3dfx/EqCmte/nVidia/06-5115.SJDecis]

19

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Proceeding.  The same rights are also infringed.  As the Equity Committee itself articulates, it is the right to have nVidia satisfy its "economic obligations" to the estate either through delivery of the Stock Consideration or through payment of what the Trustee claimed was the reasonably equivalent value for what nVidia acquired in the Transaction.  It does not matter that the Equity Committee's action is based on a bankruptcy theory.  Nor does it matter that the remedy sought is different.  What matters is each seeks redress for alleged injury to the same right through inconsistent and competing theories.  See Restatement § 25 (new theory of case is paradigm example of what is extinguished under doctrine of claim preclusion).

The first factor is also met here.  Rights or interests established in the judgment in the Trustee's Adversary Proceeding would be destroyed or impaired by prosecution of the Section 1.3 Action.  In the broadest sense, the judgment established nVidia's rights regarding the APA and the Transaction.  To revisit that territory under the Equity Committee's theories necessarily impairs nVidia's right to finality as to all possible theories for recovery and remedies arising from the Transaction.

**4. None of the Exceptions to Claim Splitting Apply**

The only exceptions to the general rule concerning claim splitting relevant to this matter are those stated in Restatement § 26(a) and (b).  Restatement § 26(a) provides that the general rule against splitting a claim does not operate if "the parties have agreed in terms or effect that the plaintiff may split his claim, or the defendant has acquiesced therein."  Without question, nVidia did not agree or acquiesce.  It protested at every

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 20 of
36

opportunity.

Restatement § 26(b) provides that the general rule does not operate if the court has reserved the plaintiff's right to the second action. To the extent the Equity Committee argues that the Court may have permitted the splitting of these claims, the Committee errs. The Court granted the Equity Committee's request for derivative standing before a trial date had been set in the Trustee's Adversary Proceeding and at a point in the chapter 11 case when it appeared competing chapter 11 plans would be under consideration. See MC Docket nos. 745, 746, 1000. Comments made by the Court and parties at the hearing at which standing was discussed show that a central premise of the Court's ruling was its and the parties' understanding that there would be only one judgment, and once that judgment was entered, the remaining adversary proceeding - whether the Trustee's or the Equity Committee's - would cease. See MC Docket no. 827, p.10-14.

The grant of derivative standing to file this Section 1.3 Action did not encompass permission to split the claim or a reservation of this right. It was simply a recognition that the Federal Rules of Civil Procedure allow a party to take inconsistent positions in one pleading. See Fed. R. Civ. P. 8(d)(2), applicable herein by Fed. R. Bankr. P. 7008 (permits a party to set out two or more statements of a claim or defense "alternatively or hypothetically"); see also Rule 8(d)(3) (permits a party to state as many claims as it has, "regardless of consistency"). Contrary to the Equity Committee's assertion, now that an unfavorable judgment has been entered in the Trustee's Adversary Proceeding, an entirely different set of rules comes into play.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 21 of
36

### 5. Claim Preclusion Applies on this Record

Application of the doctrine of claim preclusion requires: (1) the identity of claims (defined as a party's right to pursue remedies with respect to all or any part of the transaction); (2) a final judgment on the merits; and (3) privity between the parties. Hansen v. Moore (In re Moore), 368 B.R. 868, 879 (9th Cir. BAP 2007) (citing Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064 (9th Cir. 2003) for factors and noting that privity includes any relationship in which there is substantial identity between parties). All three requisite factors are present here.

First, as discussed, under the applicable transactional test, the claim asserted by the Equity Committee in the Section 1.3 Action is the same claim as was asserted by the Trustee in his Adversary Proceeding. Second, there is a final judgment in the Trustee's Adversary Proceeding. Third, the Equity Committee and the Trustee are acting in the same representative capacity and are the same party for claim preclusion analysis. Because claim preclusion treats a judgment as the full measure of relief to be accorded to the same parties on the same claim or cause action, nVidia is entitled to summary judgment.

### F. The APA is not an Executory Contract

nVidia argues that the APA was not an executory contract under the applicable definition when 3dfx filed bankruptcy in October 2002 because nVidia had fully performed its material obligations: it had paid the $70 million Cash Consideration and dismissed the patent litigation. The Equity Committee counters that the APA remained an executory contract and identifies various obligations

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 22 of
36

under the APA which it claims were both material and unperformed as of the petition date. For a variety of reasons, the Court concludes that the APA was not an executory contract when 3dfx filed this chapter 11 case.

**1. Definition of Executory Contract**

An executory contract is one under which the obligations of both parties are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. Unsecured Creditors Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev.), 139 F.3d 702, 705 (9th Cir. 1998). The law applicable to the contract is used to analyze whether a party's failure to perform its remaining obligations would amount to a material breach. In re Cochise College Park, Inc., 703 F.2d 1339, 1348, n.4 (9th Cir. 1983). Delaware law applies to the APA. See § 11.8.

Delaware courts generally follow the Restatement (Second) of Contracts § 241 in defining whether a breach is material. Norfolk Southern Railway Co. v. Basell USA Inc., 512 F.3d 86, 92 (3rd Cir. 2008) (collecting cases). The Restatement § 241 factors are: (1) the extent to which the injured party will be deprived of the benefit he reasonably expected; (2) the extent to which the injured party can be compensated for the part of the benefit of which he will be deprived; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the party failing to perform will cure his failure, taking account of all the circumstances including reasonable assurances; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 23 of
36

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Whether a breach of a contract is material is generally a question of fact. Id. at 93. However, "if the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law." Id. (internal quotation marks omitted). The Court believes it is appropriate to intervene at this point and deal with materiality as a question of law.

### 2. The APA Was Not Listed on Debtor's Schedule G

Debtor was required to file schedules when this case was commenced. Each of the schedules is to be prepared carefully, completely and accurately. Cusano v. Klein, 264 F.3d 936, 946-49 (9th Cir. 2001). Official Form 6, Schedule G ("Executory Contracts and Unexpired Leases") requires a listing of all executory contracts and unexpired leases. "Every contract to which the debtor is party is encompassed by the scheduling obligation. A contract is either in the asset/liability category or in the executory contract category . . . every contract is required to appear somewhere on the schedules." Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.), 371 B.R. 412, 417 (9th Cir. BAP 2007) (regardless of whether law is unsettled on the question of whether and when a particular contract becomes property of the estate, an executory contract must still be scheduled; schedules require full, candid, and complete reporting of facts to avoid truncating review process and usurping role of court).

The Schedule G filed by 3dfx did not identify the APA as an executory contract. MC Docket no. 1. While the fact that Debtor

[3dfx/EqCmte/nVidia/06-5115.SJDecis]

24

failed to list the APA on its Schedule G is not, of itself, fatal,
it is indicative of Debtor's view of the APA.  Debtor did list a
"final nVidia payment" of $33 million on its Schedule B ("Personal
Property") under the category for "other contingent and
unliquidated claims of every nature."[12]

### 3. Remaining Performance by nVidia

The obligation to deliver the Stock Consideration was nVidia's
only remaining material obligation when this bankruptcy case was
filed.  However, it was conditional.  Section 1.3 states the Stock
Consideration "shall only become deliverable . . . upon and subject
to" the conditions stated in that section and "in no event will any
portion of the Stock Consideration become payable unless and until"
nVidia is satisfied that 3dfx "has first paid in full or otherwise
provided for" all Liabilities.  This condition had not occurred as
of the petition date.  See TA Docket no. 499, p. 19-20, 29:21-24,
76:12-14.

Conditional obligations do not render a contract executory.
Marcus & Millichap, Inc. v. Munple, Ltd. (In re Munple, Ltd.), 866
F.2d 1129, 1130-1131 (9th Cir. 1989) (provision conditioning
payment of broker's commission on closing of sale did not make
contract executory, commission was earned when buyer procured).
nVidia's performance under § 1.3 was not due on the petition date
and cannot render the APA executory.

The Equity Committee identifies what it considers a non-
exclusive list of other material unperformed obligations of both

---

[12] As mentioned previously, the Trustee has taken the position
that the right to obtain the Stock Consideration was forfeited which
is consistent with the position taken by Debtor in its SEC filings.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 25 of
36

parties. See EC Docket no. 91, ¶41. The obligations identified for nVidia are in § 9.1(c), § 9.3, § 10, and § 4 of the Closing Agreement. Section 9.1(c) provides that nVidia's representations and warranties in § 3 of the APA expire not later than the date the Stock Consideration is delivered. The representations and warranties in § 3 are that the nVidia corporations are duly organized, they have authority to enter into the Transaction, copies of SEC filings have been delivered to 3dfx, appropriate consents have been obtained, the Transaction does not violate nVidia's bylaws, the issuance of stock is valid, no commissions are owed other than to Morgan Stanley. There is no evidence on the record that any of these remained unperformed as of the petition date. It appears unlikely that these steps - generally corporate housekeeping matters - remained unperformed when the Transaction documents were signed in December 2000 and the Transaction closed in April 2001. To the extent they were unperformed, they were not material.

Section 9.3 gives nVidia the right to offset any amount that may be owed to it against future payment obligations. This provision does not create an obligation in nVidia. Section 10, entitled post-closing covenants, contains one obligation for nVidia - that it consult with 3dfx before issuing any press release or public statement. As a matter of law, this obligation is not material in the context of this case. Finally, in § 4 of the Closing Agreement the parties agreed that 3dfx could continue to use its trademarked name solely for the purpose of winding up its operation as set forth in the Plan of Dissolution until two years after the April 2001 Closing Date or completion of liquidation,

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 26 of
36

whichever was earlier. As a matter of law, in the context of this case, this provision is not material and does not render the APA executory.

The Equity Committee does not address in any real way the question of materiality of the obligations it identifies for nVidia - it simply insists these sections and other unspecified sections render the APA executory. This is insufficient to meet its burden of proving that the APA is an executory contract. On the contrary, the Court finds that, as a matter of law, a failure to perform under any of these provisions would not amount to a material breach of the APA by nVidia and they do not support a conclusion that the APA is an executory contract.[13]

### 4. Remaining Performance by 3dfx

The Equity Committee also lists what it argues are the unperformed obligations of 3dfx. See APA § 1.3, § 9.2(i)-(vi), § 9.5, and § 10. Because the Court has determined that no material performance remained on nVidia's part, an analysis of Debtor's remaining obligations is unnecessary.

When this case was commenced, nVidia had no remaining performance the failure of which would have resulted in a breach of such magnitude that it would have excused any remaining performance on 3dfx's part. Accordingly, the APA is not an executory contract. For this reason, nVidia is entitled to summary judgment on the third claim for relief in the FAC.

//

---

[13] The Committee also argues that because nVidia filed a proof of claim it has agreed that the APA is executory. There is no merit to this argument.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 27 of
36

### G. Statute of Limitations

#### 1. The Parties' Respective Positions

nVidia argues that summary judgment is warranted because the Section 1.3 Action, filed on May 1, 2006, is time-barred. nVidia contends that pre-petition, 3dfx management knew that nVidia took the position that the APA precluded 3dfx from issuing preferred stock (as the Committee's Plan contemplates) in order to satisfy the conditions to receipt of the Stock Consideration. nVidia argues that claims for relief, such as those asserted in this Section 1.3 Action, accrued at the time this disagreement surfaced. nVidia claims that even as permitted under Bankruptcy Code § 108(a), the statute of limitations ran no later than October 15, 2004 - two years after the order for relief in this case.

The Equity Committee contends that it is "simply absurd" to suggest that the statute of limitations applies to it as it would to the Trustee. EC Docket no. 110, ¶27.

#### 2. The Statute of Limitations Applicable to the Trustee Applies to the Equity Committee

If an applicable statute of limitations prevents Debtor (or the Trustee) from pursuing a cause of action, it also prevents the Equity Committee in this case from doing so. <u>Official Committee v. Clark (In re Nat'l Forge Co.)</u>, 344 B.R. 340 (W.D. Pa. 2006) (committee's claims for unlawful stock redemption time-barred under applicable state law, summary judgment granted to defendants on statute of limitations defense); <u>Creditors' Committee of Gaslight Club, Inc. v. Fredricks (In re Gaslight Club, Inc.)</u>, 167 B.R. 507 (Bankr. N.D. Ill. 1994) (committee's claims for breach of fiduciary duty time-barred under applicable state law).

The Equity Committee also contends that any knowledge of

Case: 06-05115    Doc# 136    Filed: 01/06/09    Entered: 01/06/09 13:42:37    Page 28 of
36

Debtor's former principals cannot be imputed to it. In the Equity Committee's view, no statute of limitations would begin to run until after its appointment. EC Docket no. 110, ¶26-27. On the contrary, because the Equity Committee is acting on behalf of the estate in seeking declaratory relief, knowledge of Debtor's former principals is imputed to it as it would have been imputed to the Trustee. In re Nat'l Forge Co., 344 B.R. at 375 (discussing discovery rule for statute of limitations, unrebutted evidence of management's knowledge of alleged malfeasance supported accrual of cause of action pre-petition).

### 3. Fact that Equity Committee is a Plan Proponent does not Free it of the Normal Constraints

The Equity Committee asserts that it did not, in fact, need the order granting it derivative standing. According to the Equity Committee, its claims for declaratory relief regarding the Transaction are impervious to attack on statute of limitations grounds (or any other grounds) because it is acting as the proponent of its Plan and its ultimate goal is assumption of the APA as an executory contract. EC Docket no. 110, ¶26-27.

It is true that Bankruptcy Code § 1109 provides that the Committee "may raise and may appear and be heard on any issue in a case under this chapter" and it is true that Bankruptcy Code § 1103(c)(5) allows a committee to perform "such other services as are in the interest of those represented." It is also true that Bankruptcy Code § 365(a) allows a trustee, subject to court approval, to assume or reject any executory contract of the debtor, and Bankruptcy Code § 365(d)(2) allows assumption or rejection "at any time before the confirmation of a plan." Nevertheless, there is no authority for the proposition that these sections - as

Case: 06-05115    Doc# 136    Filed: 01/06/09    Entered: 01/06/09 13:42:37    Page 29 of
36

generous and expansive as they appear to be - grant the Equity Committee license to pursue causes of action belonging to the estate free from the normal constraints that would apply to any other litigant acting on behalf of a bankruptcy estate.

The second and third causes of action in the FAC are premised on concepts in Bankruptcy Code § 541 and § 365 (i.e., the APA is "property of the estate," and is an "executory contract"). These bankruptcy concepts are not applied in a vacuum. Substantive state law provides the context for their application. While the Equity Committee approach focusing only on the bankruptcy concepts may at first be compelling, upon reflection, the invitation to divorce the analysis of these causes of action from underlying substantive contract law must be declined.

At heart, the FAC seeks a determination from the Court that *performance* of the APA may be ordered. While the relief is phrased in terms of assumption of an executory contract under Bankruptcy Code § 365, it necessarily involves analysis of the contract principles under Delaware law, including any applicable statute of limitations. The fact that the Equity Committee seeks to confirm a plan that is premised upon assumption (and performance) of the APA does not provide it with an entirely new body of law devoid of the substantive or procedural constraints that would apply to Debtor or the Trustee. See Butner v. U.S., 440 U.S. 48, 57 (1979) (property interests are created and defined by state law; unless some federal interest requires different result, no reason to analyze differently because of bankruptcy proceeding).

The Court recognizes that if assumption of the APA as an executory contract had been sought by motion as a contested matter

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 30 of
36

under Fed. R. Bankr. P. 9014, a statute of limitations, per se, would not be germane and the primary focus would be the merits of the relief sought, including any temporal considerations that would preclude assumption under state law. However, since the instant context is an adversary proceeding, it is a relevant consideration - in addition to the substantive issues.

### 4. What Is the Appropriate Statute of Limitations?

The APA is governed by Delaware law. EC Docket no. 109, Ex. A, APA § 11.8. Delaware has a three year statute of limitations for breach of contract actions. 10 Del. C. § 8106. This three year statute of limitations applies to a declaratory relief action based on a contract. Ambase Corp. v. City Inv. Co., 2001 WL 167698, * 4 (Del. Ch. 2001) (Delaware's three year limitations period applied to injunctive and declaratory relief claims based on a breach of contract theory); NVF Co. v. New Castle County, 276 B.R. 340, 351 (D. Del. 2002), aff'd, 61 Fed. Appx. 778 (3rd Cir. 2003) (Delaware's three year limitations period applied to breach of contract claim and applied by analogy for laches analysis).

Bankruptcy Code § 108(a) provides that if applicable law fixes a period of time within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period . . . ; or (2) two years after the order for relief.[14]

//

---

[14] nVidia acknowledged at oral argument that it mistakenly stated that under its theory, the last date for filing this Action was October 15, *2005* rather than October 15, 2004 - two years after the order for relief.

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 31 of 36

### 5. **When Does a Cause of Action Accrue**?

The statute of limitations begins to run when proper parties are in existence, capable of suing and being sued, and a cause of action exists capable of being sued on. Keller v. Pres., etc. Farmers Bank, 24 A.2d 539, 541 (Del. Super. 1942). A cause of action accrues for statute of limitations purposes at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action. In re Dean Witter P'ship Litig., 1998 WL 442456, *4 (Del. Ch. 1998). The limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong. At that point, a plaintiff is on inquiry notice. Dean Witter, at *6. Inquiry notice does not require full knowledge of the material facts. Plaintiffs are on inquiry notice when they have sufficient knowledge to "raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued, would lead to the discovery of injury." Dean Witter, at *6; Pomeranz v. Museum Partners, L.P., 2005 WL 217039, *2 (Del. Ch. 2005) (party's awareness of possibly injurious effect put party on inquiry notice for purpose of accrual of cause of action); In re Nat'l Forge Co., 344 B.R. at 376 (discussing discovery rule for accrual of causes of action and tolling rules; statute of limitations barred committee's causes of action because alleged malfeasance was discoverable by debtor's management).

### 6. **Sufficiency of Notice for Accrual of Cause of Action**

The evidence offered by nVidia to show notice of the accrual of the causes of action asserted by the Equity Committee is deposition and trial testimony of Christine Hoberg, nVidia's former chief executive officer at the relevant time period given in

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 32 of 36

connection with the Trustee's Adversary Proceeding.[15]  Hoberg

testified regarding an e-mail message dated August 24, 2001 she had

sent to Richard Heddleson, the former chief financial officer of

3dfx regarding a proposed financing.  The e-mail read "Based on the

conversations with both our attorneys and [CEO of nVidia] Jensen

[Huang], we will not support a deal like the one you proposed over

lunch the other day (i.e. some form of preferred stock or loan from

board or major shareholders to cover the remaining liabilities) so

3dfx could get the entire one million shares for distribution."  EC

Docket no. 107, Varian Dec., Ex. C, deposition transcript of

February 25, 2004, pp. 201:21-202:2.  She also testified at her

deposition regarding a subsequent proposal (April 2002) to issue

preferred stock:

> I believe[d] that doing that kind of a transaction was
> precluded under the [APA] because I believed the [APA] did not
> allow any change in the debt or equity structure of 3dfx
> outside the ordinary course of business . . . [Heddleson]
> disagreed with my interpretation of the contract . . . and I
> said . . . why don't we have the lawyers look into it because
> it really is a legal call.  And I never heard from him again
> about that.

EC Docket no. 107, Kramer Dec., Ex. A, deposition transcript from

August 13, 2004, pp. 600:8-601:14.

This is sufficient notice that a dispute existed which could

have been litigated by the parties in existence at that time.

There was an objective disagreement as to whether a preferred stock

---

[15]  The Equity Committee's objection to nVidia's evidence is
overruled. The evidence is not offered for an impermissible hearsay
purpose but is instead offered to show notice. Marsee v. United States
Tobacco Co.,866 F.2d 319,325-6 (10th Cir. 1989)(hearsay rule
irrelevant where publications admitted to show notice); Neal-Lomax v.
Las Vegas Metropolitan Police Dept., 574 F. Supp.2d 1170, 1183 (D.
Nev. 2008) (acknowledging that on appropriate facts, reports could
have been offered for non-hearsay purpose of showing inquiry notice).

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 33 of
36

issuance was permitted under the APA and a clear suggestion that the parties' respective lawyers analyze the question. Based on this evidence, 3dfx management was aware of facts that would have permitted it to sue for declaratory relief (or some other form of relief) as early as August 2001 or at least as of April 2002. If April 2002 is considered the relevant date, the statute of limitations ran at the latest by April 2005.[16]

Viewing the facts offered by nVidia in the light most favorable to the Equity Committee, the Equity Committee has failed to meet its burden to raise a triable issue of fact on this record. The Section 1.3 Action is couched in bankruptcy terminology but it is grounded in state contract law and is designed to compel performance of the APA. Viewed in this light, the claims accrued at the earliest in August 2001 and at the latest in April 2002. Because the Section 1.3 Action was not filed until May 1, 2006, it is time-barred and summary judgment in nVidia's favor is appropriate.

**IV. CONCLUSION**

For all of the foregoing reasons, the Court finds that claim preclusion applies and summary judgment in nVidia's favor is warranted as to the first three claims for relief in the FAC. The Court also finds that the APA is not an executory contract and summary judgment in nVidia's favor is warranted as to the third claim for relief in the FAC. Finally, the Court also finds the Section 1.3 Action is time-barred by the applicable statute of

---

[16] The Trustee's counsel was also aware of these positions due to his participation in these depositions in February and August 2004.

[3dfx/EqCmte/nVidia/06-5115.SJDecis]                                            34

limitations.  As a result, nVidia is entitled to summary judgment as a matter of law.

Because nVidia is entitled to summary judgment, the Equity Committee's motion necessarily fails and the Court denies it with prejudice.

Counsel for nVidia is requested to submit an appropriate order approved as to form by counsel for the Equity Committee.

UNITED STATES BANKRUPTCY COURT

For The Northern District Of California

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 35 of
36

**Adversary No. 06-5115**

Court Service List - by ecf or mail:

Fred Holden, Esq.
Robert P. Varian, Esq.
Karen Johnson-McKewan, Esq.
Orrick Herrington & Sutcliffe LLP
The Orrick Building
405 Howard St.
San Francisco, CA 94105-2669


Eric D. Goldberg, Esq.
Margreta M. Morgulas, Esq.
Stutman, Treister & Glatt
1901 Ave of the Stars, 12th floor
Los Angeles, CA 90067


Nanette Dumas, Esq.
Office of the U. S. Trustee
280 So. First Street, Rm. 268
San Jose, CA 95113-3099


Robert E. Izmirian, Esq.
Peter G. Bertrand, Esq.
Kim Y. Arnone
Buchalter Nemer
333 Market Street, 25th Floor
San Francisco, CA 94105-2130


Aron M. Oliner, Esq.
Duane Morris
1 Market, Spear Tower, #2000
San Francisco, CA 94105-2130

Case: 06-05115   Doc# 136   Filed: 01/06/09   Entered: 01/06/09 13:42:37   Page 36 of
36